**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. ALI ABDUL GHANI KHALEEL, Defendant. | No. 11-CR-103-LRR  **ORDER** |

_____

## *I. INTRODUCTION*

The matter before the court is Defendant Ali Abdul Ghani Khaleel's Objections (docket no. 44) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 24), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 14).

## *II. RELEVANT PROCEDURAL HISTORY*

On June 7, 2011, a grand jury returned an Indictment (docket no. 2) against Defendant. Count 1 of the Indictment charges Defendant with possession with the intent to distribute and aiding and abetting the possession with the intent to distribute methamphetamine, cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C), 841(b)(1)(D) and 18 U.S.C. § 2.

On July 12, 2011, Defendant filed the Motion. On July 22, 2011, the government filed a Resistance (docket no. 21). On July 25, 2011 Judge Scoles held a hearing ("Hearing") on the Motion. Defendant appeared in court with his attorney JoAnne Lilledahl. Special Assistant United States Attorney Daniel Chatham represented the government. On August 2, 2011, Judge Scoles issued the Report and Recommendation, which recommends that the court deny the Motion. On August 31, 2011, Defendant filed

his Objections.[1]  The Objections and Report and Recommendation are fully submitted and ready for decision.

## III.  STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions.").  It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required.  *Lothridge*, 324 F.3d at 600.  Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV.  ANALYSIS

Defendant objects to two of Judge Scoles's findings.  First, Defendant objects to Judge Scoles's finding that Defendant consented to a search of his bags.  Second, Defendant objects to Judge Scoles's finding that Defendant's consent was voluntary.  After a de novo

---

[1] Objections to the Report and Recommendation were originally due by August 16, 2011.  On that date, Defendant filed an "Unresisted Motion to Extend Deadline for Filing Objections to Report and Recommendation" (docket no. 29).  On August 17, 2011, Judge Scoles issued an "Order Extending Deadline to Respond" (docket no. 30), which extended the deadline for filing objections to the Report and Recommendation to August 22, 2011. On August 22, 2011, Defendant filed a "Motion to Stay All Deadlines" (docket no. 37). On August 24, 2011, Judge Scoles issued an "Order Extending Deadline to File Objections to Report and Recommendation" (docket no. 40), which extended the deadline to August 31, 2011.

review of the record, the court overrules Defendant's Objections and adopts Judge Scoles's findings in their entirety.

### A. *Did Defendant Consent to the Search?*

Defendant takes issue with Judge Scoles's finding that Defendant consented to the search. Objections at 1–2. According to Defendant, Trooper Simmons could not have obtained consent in the short fifteen to eighteen second window during which Trooper Simmons alleges that Defendant consented. *Id.* Defendant further contends that Trooper Simmons was "looking to find a way to search the vehicle" and "knew he had to get the consent of both the driver and passenger in order to search the vehicle and the personal property in it." *Id.* at 2 (internal quotation marks omitted). Defendant argues that this desire to conduct the search, coupled with the lack of audio recording and written consent, suggests that Trooper Simmons's testimony is not credible. *Id.*

The court finds that Trooper Simmons delivered credible testimony at the Hearing. Trooper Simmons testified that, if Defendant had refused to consent to the search, he would have waited for a drug dog to air sniff the bags in an attempt to establish probable cause. *See* Tr. at 21–22. At the time Trooper Simmons asked Defendant for consent, a K-9 unit was already on its way to the scene. *Id.* Therefore, because Trooper Simmons did not wait for the dog, this court finds that Trooper Simmons believed Defendant had consented to the search and his testimony to this effect was credible. It is reasonable to conclude that Trooper Simmons could have asked for and received Defendant's consent in fifteen seconds. Furthermore, it was not necessary for Trooper Simmons to obtain written consent, *see United States v. Carrate*, 122 F.3d 666, 670 (8th Cir. 1997), and his failure to do so does not undermine his credibility. While the inexplicable malfunctioning of Trooper Simmons's microphone gives the court pause, the court nevertheless adopts Judge Scoles's finding on this issue.

### *B. Was Defendant's Consent Voluntary?*

Defendant next objects to Judge Scoles's finding that Defendant's consent was voluntary. Objections at 3–4. A court determines the voluntariness of a person's consent by assessing "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also United States v. Smith*, 260 F.3d 922, 924 (8th Cir. 2001) (discussing the individual characteristics and environmental factors relevant to a court's determination of the voluntariness of a person's consent); *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990) (same). "The government bears the burden to prove by a preponderance of the evidence that consent to search was freely given . . . ." *Smith*, 260 F.3d at 924. Here, Defendant objects only to Judge Scoles's finding that the environmental factors suggest Defendant's consent was voluntary.

In *Chaidez*, the Eighth Circuit Court of Appeals held that, when determining the voluntariness of a person's consent,

> courts should ask whether the person who consented: (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

*Chaidez*, 906 F.2d at 381 (citations omitted). Defendant first argues that the second and third factors weigh against a finding of voluntariness. Objections at 3. According to Defendant, due to the lack of audio recording and written consent, "there is no way to know whether Defendant was threatened or physically intimidated by Trooper Simmons or whether Trooper Simmons made any promises or misrepresentations." *Id*. Since Defendant made no allegations that Trooper Simmons threatened or physically intimidated him or made any promises or misrepresentations, the court finds this argument unpersuasive.

Second, Defendant argues that the fifth *Chaidez* factor weighs against a finding of voluntariness. *See id.* Defendant contends that, although the encounter between Defendant and Trooper Simmons "occurred along Interstate 80 in the middle of the day[,] . . . he would have had to . . . walk[] away along the shoulder of a very busy interstate" if he refused to give Trooper Simmons consent. *Id.* A passenger's refusal to give consent, however, does not require the passenger to leave the area. Nothing prevented Defendant from refusing consent, removing his bags from the car and waiting until Trooper Simmons finished searching the vehicle. Further, courts have routinely held that a public highway is not a coercive environment. *See, e.g.*, *United States v. Flores*, 474 F.3d 1100, 1104 (8th Cir. 2007); *United States v. Urbina*, 431 F.3d 305, 309 (8th Cir. 2005); *Chaidez*, 906 F.2d at 382; *United States v. Velasquez*, 885 F.2d 1076, 1082 (3d Cir. 1989).

Thus, the court finds that the *Chaidez* factors indicate Defendant's consent was voluntary. In particular, the court notes that, under the sixth factor, Defendant watched the state troopers conduct the search but did not object. Tr. at 22–23, 38–41. As several courts have noted, this type of behavior is indicative of a voluntary consent. *See, e.g.*, *United States v. Lopez-Mendoza*, 601 F.3d 861, 866 (8th Cir. 2010); *United States v. Saenz*, 474 F.3d 1132, 1137 (8th Cir. 2007); *Flores*, 474 F.3d at 1104.

Next, Defendant objects to Judge Scoles's finding that the facts of *United States v. Escobar*, 389 F.3d 781 (8th Cir. 2004), "are distinguishable from the facts in this case." Objections at 3–4. In *Escobar*, a police officer misrepresented to the defendants that a drug dog had alerted to the defendants' bags. *Escobar*, 389 F.3d at 783. In upholding the district court's finding that the defendants' consents were tainted by the misrepresentation, the Eighth Circuit found that the officer "communicated to [the defendants that] there was probable cause to search and they had no choice but to permit it." *Id.* at 786.

Here, Defendant suggests that Judge Scoles erred in relying on "Trooper Simmons's testimony that he told Defendant [that] the driver of the vehicle had given consent to search the vehicle." Objections at 3. The court finds that the driver did consent to the search, as

evidenced by the fact that he signed a consent form. Tr. at 16. Thus, unlike in *Escobar*, there was no misrepresentation made by a law enforcement official that implied probable cause existed. Trooper Simmons truthfully conveyed to Defendant that the driver had consented to the search of the vehicle. It is not reasonable to conclude that, because Trooper Simmons told Defendant that the driver consented to the search of the vehicle, he communicated to Defendant that he had probable cause to search Defendant's bags. Thus, the court adopts Judge Scoles's finding that *Escobar* is distinguishable and that Defendant's consent was voluntary.

## V. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 44) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 24) is **ADOPTED**; and

(3) The Motion (docket no. 14) is **DENIED**.

**DATED** this 20th of September, 2011.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA